# Exhibit 2

# AFP Board Meeting: Protocol

LONDON, 11. MAY 2009

---

PRESENT: RODDY, BERNHARD, ▮ DANI

---

1. **Client Structures (Basis: Charts from Dani):**
   Several structures are discussed and various modules are possible. In general, the following core structures can be sold to clients:
   - Structure number two (page 1)
   - Structure number three (page 2), whereas the insurance is combined with a re-insurance solution
   - Structure number five (page 3).

   *General information:*

   The cash-out / cash-in transaction in Hong Kong is more or less free of charge (no bank charges)

   *Description Structure 2:*

   With structure 2, black money remains black money. The main benefit is that the client is better protected. The money will be transferred to an AFP fiduciary account in Hong Kong. Parallel, a client trust and a client company (subsidiary of the trust) is established. The money will be transferred (cash – in / cash – out) to the client structure. The client mandates the asset-manager in Singapore to manage the money. The client can choose the custodian bank.

   Hong Kong law forbids to disclose the BO to any third party. The trust business is not regulated and for that reason, there is no regulator. The prerequisite to do trust business is the need for HK$ 3'000'000, whereas half of it is blocked, half can be used as operating capital. At the moment, not even inland revenue has access to BO data. Whether or not stricter regulation will apply in the future is still open.

   The BO information has to be disclosed to the HK bank. However, if the trust owns less than 10% of the HK Ltd. as well as if there are 11 investors, now BO information is needed. Solution: HK Ltd. is owned by the trust and 10 off-shore companies.

   Minimum AuM: USD 1 Mio.

   *Description Structure 3:*

   The big advantage of the insurance – reinsurance solution is that it allows to make white money out of black. The client invests in a officially disclosed live insurance policy. In parallel, the black money is channelled to an off-shore reinsurance vehicle (various options to do so). Both accounts are managed by the Singapore asset – manager. The returns of the white policy is then paid out of the substance of the black reinsurance. Consequence: Client should have also white money, in a significant relation to black money. It takes a number of years to reduce the black substance. Advantage: Group also manages white money, in addition to black.

   Minimum AuM: USD 5 Mio.

*Description Structure 5:*

Like in Structure 1, black money remains black. The client enjoys maximum protection. First, the client structure is never the owner of the funds. They remain in the our group. Through the use of a RAK, there is no BO disclosure need in Dubai (BO = RAK). Through using St. Vincent Fund structures, the protection is even better. The St. Vincent fund manager can delegate asset management activities to Singapore. The client has access to his money via a non disclosed call-put agreement on the shares of the RAK.

Minimum AuM: USD 5 Mio

2. **Client ownership & contractual set-up**

   The board decides that the clients coming from IHAG have a contract with AFP, not with Allied. What type of services are produced in Zürich / Liechtenstein and what type are produced in Hong Kong is subject to a case by case decision. If services are produced within Allied, a fee applies.

   For standard clients, the standard price list and transfer pricing agreement applies. For larger and more complex clients, the total fee as well as the fee distribution is individually negotiated on a case by case basis.

   It has to be discussed whether or not for some clients, a new company, similarly owned by the 3 parties, is the contracting party. → **To do no. 1**

3. **Operations & Quality**

   *Broadening know-how base:* The board discusses a longer list of points that can be improved. ▮ informs the board about planned changes in the organisational set – up as well as planned new hires. It is, in particular, planned to split admin from executing client needs. In addition, a potential new hire (highly recognised female lawyer) could join the group in order to do the solution development work. It is clear to everybody, that the list of top qualified technical people throughout all groups is too small (Roddy, Bernhard, Rolf, ▮). Target: Solution development work can be done out of Hong Kong until the end of 2009. With that, the problem *"Bottlenek* ▮*"*, as well as *"Sensibility with regards to the issue of confidentiality"* can be solved.

   *Client documentation:* Roddy / ▮ inform the board that issues in that respect are not a problem anymore.

   Promotion of Nerine: The issue was addressed whether Nerine has been promoted too actively, at the cost of better client solutions. A deeper discussion about that is held. Bernhard argues that the proof of concept is, at least in some cases, highly questionable. Whether or not the structure holds the pressure coming from a legal inquiry is highly questionable. For Roddy, it is rather an know – how and education problem. Nobody has a too broad understanding of foundations (especially the pros and cons with regards to trusts). It is therefore decided that Bernhard will educate ▮ about foundations. ▮ will send a list of attendants, the education is done no later than the end of September. → **To do no. 2**

4. **Situation Weidinger:**

   Given the unsatisfactory situation business wise, the board decides to stop the employment of Peter. A replacement for a certain period could be made with a qualified person from Allied, ▮ Before the decision is communicated to ▮ a meeting with ▮ Bernhard, Roddy and ▮ will take place in Hong

Kong on the 18th of May. After that, ▇ is informed. In the unlikely event that ▇ s not the man, we will hire locally. It is important not to loose ▇

5. **Singapore Trust JV with** ▇

No news from the officials. Bernhard has mandated a specialised law firm in order to resolve the pending issues.

6. **AFP Status Q1 2009**

The financial status will be send via e-mail in the next days.

7. **Status of Closing the AFP transaction**

Dani & Roddy discuss the pending issues. A closing bible is in preparation by ▇ Especially the two converts as well as the loan must be eliminated.

8. **Status of Asset Manager in Singapore**

Dani informs about the status. We are close to hire a talented CEO and a small team for Singapore. ▇ supports the application process.

9. **Development of the Delhi Office (after the board meetin)**

▇ and Roddy inform about the very successful meetings held in Delhi. There is huge potential in this country to acquire a significant portion of business.

**To do list:**

1) Decide, whether or not a new company shall be established as the contracting party for clients (June 2009)

2) Education of AFP people with regards to foundations (September 2009)

Dani, 13th of May, 2009